MATTER OF S/T "GRAND ZENITH"

In Fine Proceedings

SFR–10/28.333

*Decided by Board August 19, 1977*

(1) Appellant carrier paid off and discharged the involved crewman without first obtaining the consent of the Attorney General as required by section 256 of the Immigration and Nationality Act. The Service fined the carrier under two provisions of the Act—section 256 for the unauthorized pay-off and discharge, and under section 254(a)(2), for failure to detain on board a crewman who was refused a conditional landing permit.

(2) The fine imposed under section 256 of the Act was proper because the crewman was paid off and discharged without first receiving the consent of the Attorney General.

(3) Since the carrier was fined for discharging the crewman under section 256, it was not proper to assess a fine under section 254(a)(2) because in these circumstances the Service is restricted from imposing two fines for the same misfeasance by the carrier.

In re: S/T "GRAND ZENITH," which arrived at the port of Los Angeles, California, from foreign on August 11, 1976. Alien crewman involved: RONG-YIH KUO

Basis for Fine: Act of 1952—Section 254(a)(2)—[8 U.S.C. 1284(a)(2)] Section 256 [8 U.S.C. 1286]

ON BEHALF OF APPELLANT:   Charles M. Haid, Jr., Esquire
                          Lillick, McHose & Charles
                          500 Sansome Street
                          San Francisco, California 94111

BY: Milhollan, Chairman; Wilson, Appleman, and Maguire, Board Members

This is an appeal from a decision of the District Director at San Francisco, California, dated December 7, 1976, wherein a fine of $1,000 ($2,000 mitigated to the extend of $1,000) was impossd on the vessel's agents, Norton, Lilly, and Company, under section 254(a)(2) of the Immigration and Nationality Act for failure to detain on Board an alien crewman who was refused a conditional landing permit, and under section 256 of the Act for unlawfully paying off and discharging the alien crewman without first having received the consent of the Attorney General.

The basic facts of record are these: (1) the vessel arrived at Los Angeles and was inspected by the immigration authorities; (2) the master of the vessel was ordered to detain Rong-Yih Kuo because his passport was not in order; (3) the vessel proceeded to Pittsburgh, California, where the master requested the vessel's local agent to ar-

range for the seaman's repatriation to Taiwan; (4) on August 27, 1976, the above-captioned alien was presented to the Immigration Service in San Francisco for processing his repatriation; he had previously been paid off and discharged from the vessel by the master; and (5) the appellant did not obtain the consent of the United States Immigration Service prior to discharging the alien crewman here involved. He was repatriated to Taiwan without expense to the Government.

We have determined that the fine imposed pursuant to section 256 of the Act was properly imposed. Under the terms of section 256 of the statute, the carrier has an absolute duty not to pay off or discharge any alien crewman employed on board a vessel or aircraft arriving in the United States without first having obtained the consent of the Attorney General. The element essential to establish a violation is termination of the crewman's employment by an affirmative act of the parties responsible for the vessel's operation—including the agents and masters, who are charged with knowledge of the pertinent regulations, *Matter of HMS "Bounty,"* 10 I. & N. Dec. 391 (BIA 1963). Fines imposed pursuant to this section are in the nature of an in rem liability of the vessel, assessable against any one of the persons responsible for the vessel and named in such section regardless of which of them actually performed the physical act of paying off or discharging an alien seaman, and such fine is not merely the liability of the person performing the physical act of paying off, *United States v. Seaboard Surety Company,* 239 F.2d 667 (4 Cir. 1957); *Matter of M/V "Bergen Juno,"* Interim Decision 2554 (BIA 1977). The record in this case supports the conclusion that the alien seaman was paid off and discharged without first receiving the consent of the Attorney General to do so. See: *The Limon,* 22 F.2d 270 (2 Cir. 1927); *Matter of SS. "Republic,"* 5 I. & N. Dec. 663 (BIA 1954); *Matter of SS. "Federal Commerce,"* 8 I. & N. Dec. 366 (BIA 1959); *Matter of SS. "Loch Avon,"* 7 I. & N. Dec. 215 (BIA 1956); *Matter of SS. "Captain K. Papzoglou,"* 5 I. & N. Dec. 567 (BIA 1953); *Matter of SS. "Ciudad De. Barquisimeto,"* 6 I. & N. Dec. 311 (BIA 1954).

Basically, the requirements of detention in Section 254, specifically subsection (3), and section 256 are aimed at controlling alien crewmen, and their ultimate removal if they are found to be inadmissible. In this case the carrier was fined under both section 254(a)(2) (failure to detain on board the vessel until proper permission is given by the Service) and section 256 (to pay off or discharge an alien crewman without first having obtained consent of the Service). We believe that in these circumstances, the Service is restricted from imposing more than one fine for the identical misfeasance.[1] Consequently, we shall order that the fine

---

[1] See: *Navigazione Generale Italiana v. Elting,* 66 F.2d 537 (2 Cir. 1933); *Lloyd Sabaudo Societa, Anonima Per Azioni v. Elting,* 80 F.2d 869 (2 Cir. 1936); *Cosulich Line of Trieste v. Elting,* 40 F.2d 220 (2 Cir. 1930).

imposed under section 254(a)(2) be remitted in full. Accordingly, the following order will be entered.

**ORDER:** The District Director's decision of December 7, 1976, is modified to provide remission in full of the fine imposed under section 254(a)(2), and as so amended the decision is affirmed. The penalty permitted to stand is $500.00.