**NATIONAL SAVINGS & TRUST COMPANY, a Corporation and Alvin L. Newmyer, Jr., Executors of the Estate of William Rosendorf, Deceased, Appellant,**

v.

**Mollie ROSENDORF, Appellee.**

**No. 74–1400.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 3, 1976.

Decided June 23, 1977.

Francis J. Ferguson, Washington, D.C., for appellant.

James T. Sharkey, Washington, D.C., for appellee.

Before ROBINSON and WILKEY, Circuit Judges, and WILLIAM J. JAMESON,* United States Senior District Judge for the District of Montana.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

**SPOTTSWOOD W. ROBINSON, III, Circuit Judge:**

This controversy, like another before it,[1] was spawned during a conservatorship of the estate of one William Rosendorf, extending from 1965 to his death in 1969.[2] During that period, successive conservators[3] were authorized by the appointing court to expend estate funds for the benefit of the ward, which they extensively did.[4] Some such disbursements were made by checks payable to him; other checks for that purpose were drawn in favor of Mollie Rosendorf, his wife.[5] The present suit, brought by Mr. Rosendorf's executors[6] against Ms. Rosendorf, charges that she converted to her own use some of the monies represented by those checks.[7] The District Court granted summary judgment for Ms. Rosendorf on the ground that the executors were collaterally estopped from litigating that thesis, in consequence of determinations made in a proceeding before the Superior Court of the District of Columbia[8] disposing of objections to the conservators' accounts.[9] We disagree, and accordingly reverse.

## I

■ Indubitably, the doctrine of collateral estoppel interdicts relitigation of issues resolved in a prior suit between the same parties or their privies on another cause of action.[10] But, unlike the bar of res judicata,[11] an estoppel intercepts only issues that were actually determined in the earlier suit;[12] it does not affect those that might

---

1. The relevant events are more fully described in text *infra* at notes 15–22.

2. See D.C.Code § 11–522 (Supp. II 1963). The conservatorship began in the United States District Court for the District of Columbia, wherein jurisdiction then resided. *Id.* § 522. National Savings and Trust Company, the original conservator, was succeeded in 1967 by James C. Toomey as substitute conservator. In 1972, jurisdiction over the conservatorship was statutorily transferred to the Superior Court of the District of Columbia, D.C.Code §§ 11–501, 11–921(a)(5)(A)(vi) (1973), wherein the substitute conservator's second and final account came on for settlement. See text *infra* at notes 15–23.

3. See note 2 *supra*.

4. A series of District Court orders authorized periodic disbursements, to specified maximums, for current living expenses of William Rosendorf. The alleged disposition of these monies is central to this lawsuit. Not involved herein are payments separately made to Mollie Rosendorf, William's wife, which the District Court authorized for her own living expenses. For a more comprehensive discussion, see *Rosendorf v. Toomey*, 349 A.2d 694, 697 (D.C. App.1975).

5. In the beginning, it seems, checks for Mr. Rosendorf's maintenance were made payable to him. Illness in 1967 left him severely incapacitated, and during the remainder of the conservatorship checks for that purpose were made payable to Ms. Rosendorf, in addition to those to her for her own maintenance. See note 4 *supra*.

6. National Savings and Trust Company and Alvin L. Newmyer, Jr.

7. The executors' amended complaint seeks recovery of the monies allegedly converted, impression of a constructive trust on such as she may have retained, and punitive damages. Joint Appendix (J.App.) 5, 6.

8. *In re Rosendorf*, Civ. No. 2293–65 (D.C.Super.Ct. July 12, 1973) (unreported), J.App. 86, aff'd sub nom. *Rosendorf v. Toomey, supra* note 4.

9. *National Savs. & Trust Co. v. Rosendorf*, Civ. No. 1193–72 (D.D.C. Dec. 20, 1973) (unreported), J.App. 1.

10. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122, 1127 (1955); *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 91, 74 S.Ct. 414, 416, 98 L.Ed. 532, 537 (1954); *Nixon v. Richey*, 168 U.S.App.D.C. 172, 180 n.75, 513 F.2d 430, 438 n.75 (1975); *Stebbins v. Keystone Ins. Co.*, 156 U.S.App.D.C. 326, 331, 481 F.2d 501, 506 (1973).

11. See note 26 *infra*.

12. *Lawlor v. National Screen Serv. Corp., supra* note 10, 349 U.S. at 326, 75 S.Ct. at 867, 99 L.Ed. at 1127; *Stebbins v. Keystone Ins. Co., supra* note 10, 156 U.S.App.D.C. at 331, 481 F.2d at 506; *Pippin v. United States*, 74 App. D.C. 131, 132, 121 F.2d 98, 99 (1941); *Bijur v. Kennington*, 51 App.D.C. 230, 232, 278 F. 313, 315 (1922).

have been but were not decided,[13] nor those not essential to the previous adjudication.[14] The judgment under review does not survive an application of these principles.

In the Superior Court proceeding, children of Mr. Rosendorf [15] sought reopening and reauditing of the conservators' accounts.[16] They insisted that the conservators bore an obligation to see that the funds remitted by the checks intended for Mr. Rosendorf's benefit were actually devoted to his needs, and were not diverted to Ms. Rosendorf's use.[17] The court rejected this contention.[18] The court also noted that "Mollie Rosendorf is not subject to control in this proceeding. She was not appointed in any capacity and had no duty to account for her actions in handling the family household funds." [19] The court concluded that "[s]ince she is the defendant in an action for fraudulent conversion brought by the estate of William Rosendorf, deceased, in the United States District Court for the District of Columbia, . . . which raises factual issues with respect to her disposi-

tion of living expenses disbursed to her by the conservator,[20] her accountability, if any, must be determined in that action." [21] On appeal, the District of Columbia Court of Appeals affirmed,[22] and expressly approved the Superior Court's handling of Ms. Rosendorf's involvement in the affair.[23]

## II

■ In the case at bar, as mentioned before, the District Court viewed the litigation in the District of Columbia courts as a barrier to Mr. Rosendorf's executors' conversion action against Ms. Rosendorf.[24] The court reasoned:

When William Rosendorf's property came under the control of the Court thru the conservatorship, all matters pertaining to its management were to be resolved in that proceeding for such is the statutory scheme of [D.C.Code §§ 21–1501 to 21–1507 (1973)]. Having failed in the Court of competent jurisdiction to achieve its purpose, the Plaintiffs are col-

13. *Stebbins v. Keystone Ins. Co., supra* note 10, 156 U.S.App.D.C. at 331, 481 F.2d at 506; *Pippin v. United States, supra* note 12, 74 App. D.C. at 132, 121 F.2d at 99; *In re Curtiss,* 46 App.D.C. 183, 189 (1917).

14. *Stebbins v. Keystone Ins. Co., supra* note 10, 156 U.S.App.D.C. at 331, 481 F.2d at 506; *Eastern Foundation Co. v. Creswell,* 154 U.S.App. D.C. 240, 243, 475 F.2d 351, 354 (1973).

15. Sidney Rosendorf, Ruth Rosendorf Greenberg Mann and Harvey Rosendorf are his children by a prior marriage and beneficiaries of his estate. With but one possible exception, unimportant for present purposes, see *In re Rosendorf, supra* note 8, J.App. 86, they fought the battle in the District of Columbia courts. See *id.,* J.App. 86–92; *Rosendorf v. Toomey, supra* note 4, 349 A.2d at 696.

16. National Savings and Trust Company had rendered its accounting in, and had obtained its discharge from, the District Court prior to the jurisdictional transfer. The Superior Court, concluding that the objections were untimely as to that conservator, found it unnecessary to determine whether it had power to reopen its accounts. *In re Rosendorf, supra,* note 8, J.App. 87–88. On appeal, the ruling on timeliness was sustained. *Rosendorf v. Toomey, supra* note 4, 349 A.2d at 698.

17. Although the attack focused primarily on the checks payable to Ms. Rosendorf, it encom-

passed as well the proceeds of checks naming Mr. Rosendorf as payee. As summarized by the Superior Court, the arguments were that "(a) certain of the disbursements intended to benefit the ward were made through checks payable to Mollie Rosendorf, his wife; (b) certain checks made payable to the ward were not endorsed by him; and (c) Mollie Rosendorf either deposited checks in her personal account under the control only of herself and a daughter by a former marriage (Patricia Deutschman), and/or the proceeds of cashed checks were placed by Mollie Rosendorf in her safe deposit box which was similarly controlled." *In re Rosendorf, supra* note 8, J.App. 88.

18. *Id.,* J.App. 88–92.

19. *Id.,* J.App. 92.

20. *Id.,* J.App. 92. The reference to the litigation at bar is obvious.

21. *Id.,* J.App. 92.

22. *Rosendorf v. Toomey, supra* note 4, 349 A.2d at 698–700.

23. *Id.,* at 701 n.8.

24. *National Savs. & Trust Co. v. Rosendorf, supra* note 9, J.App. 1.

laterally estopped to proceed in this Court.

Plaintiffs co-executors are successors in interest to the identical right of property that was in the Conservator. As such, they are bound in their representative capacities by Judgment in which their predecessors were parties.

The real parties in interest in the Conservatorship were the adult children of the ward and Mollie Rosendorf. In this action the real parties in interest are the adult children and Mollie Rosendorf. Although not the accountable fiduciary in the Conservatorship, Mollie Rosendorf would have been bound by a judgment establishing the liability of the conservators for the disbursements in question. She may thus effectively evoke the ban of Collateral Estoppel. . . .

Collateral Estoppel precludes relitigation of issues actually litigated and determined. Prior approval of those expenditures by the Superior Court ended the matter.[25]

We think differently. As the District Court correctly perceived, we deal not with a problem of res judicata but one of collateral estoppel.[26] The question, then, is not what might have been resolved in the earlier proceeding[27] but what in fact was decided.[28] The contest there, as limited by the Superior Court, was between children of Mr. Rosendorf and the conservators,[29] and the issue thus emerging was whether the latter had a fiducial duty to assure the proper application of estate funds disbursed for Mr. Rosendorf's benefit.[30] The issue here, wholly between the executors and Ms. Rosendorf, is whether she violated a duty of her own to respect the purpose for which those disbursements were made.[31] In approving the conservators' conduct, the District of Columbia courts in no way condoned any wrongdoing on Ms. Rosendorf's part, nor in their view was it necessary for them to consider whether any had occurred.[32] There was no determination as to Ms. Rosendorf's liability for the alleged diversion of proceeds of the disbursement checks; instead both of those courts made clear that the question was outside the ambit of the litigation before them, and was for decision in this very case.[33]

The judgment appealed from is reversed and the case is remanded to the District

**25.** Id., J.App. 2–3.

**26.** The rule of res judicata applies only to new litigation between the same parties or privies on the same cause of action. Lawlor v. National Screen Serv. Corp., supra note 10, 349 U.S. at 326, 75 S.Ct. at 867, 99 L.Ed. at 1126; United States v. Munsingwear, Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 105–106, 95 L.Ed. 36, 40 (1950); Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905–906 (1948). Compare note 10 supra. When operable, unlike collateral estoppel, res judicata concludes not only issues decided but also those which could have been raised and decided in the earlier proceeding. Tutt v. Doby, 148 U.S.App.D.C. 171, 173, 459 F.2d 1195, 1197 (1972); Brotherhood of R.R. Trainmen v. Atlantic Coastline R.R.., 127 U.S.App.D.C. 298, 300, 383 F.2d 225, 227 (1967), cert. denied, 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968); Calvin v. Calvin, 94 U.S.App.D.C. 42, 44, 214 F.2d 226, 228 (1954); Knutson v. Gallsworthy, 82 U.S.App.D.C. 304, 308, 164 F.2d 497, 501 (1947). Compare notes 12–14 supra. Here, however, both the parties and the claims differ significantly. See text infra at notes 29–33.

**27.** We do not suggest, as did the District Court, see text supra at note 25, that Ms. Rosendorf's liability could have been a proper subject of investigation in that proceeding. Unlike the District Court, we discern nothing in D.C.Code §§ 21–1501 to 1507 (1973) dispensing with the need for an independent action when the objective is recovery of estate assets in the hands of third parties. In any event, the highest court of the District of Columbia—the final authority on the meaning of District of Columbia statutes—has ruled that Ms. Rosendorf's liability is adjudicable in the instant case. See text supra at notes 19–23. For our purposes the matter ends there.

**28.** See text supra at notes 12–13.

**29.** See note 16 supra.

**30.** See In re Rosendorf, supra note 8, J.App. 88–92; Rosendorf v. Toomey, supra note 4, 349 A.2d at 698–700.

**31.** See generally, e. g., Prosser, Torts § 15 (4th ed. 1971).

**32.** See text supra at note 14.

**33.** See text supra at notes 19–23.

Court for further proceedings not inconsistent with this opinion.

*So ordered.*